[No. C063116. Third Dist. Sept. 15, 2010.]

MICHAEL V. STRONG, as Assessor, etc., Plaintiff and Appellant, v.
SUTTER COUNTY BOARD OF SUPERVISORS, Defendant and Appellant.

484

## COUNSEL

Cota Cole & Associates, Dennis M. Cota, Ryan R. Jones and Jonathan E. Miller for Plaintiff and Appellant.

Ronald S. Erickson, County Counsel, Robert A. Muller, Assistant County Counsel, and William J. Vanasek, Deputy County Counsel, for Defendant and Appellant.

## OPINION

**ROBIE, J.**—Dissatisfied with the refusal of the Sutter County Board of Supervisors (the board) to employ independent legal counsel to represent him in a dispute with the board, Sutter County Assessor Michael V. Strong instituted an ex parte proceeding under Government Code section 31000.6 (set out at length below).[1] In that proceeding, he sought "an ex parte order directing that Sutter County engage [a particular attorney] as independent counsel for [him] in lieu of representation from Sutter County Counsel."

In response, the board argued (among other things) that the trial court's role in a proceeding under section 31000.6 is limited to finding whether county counsel would have a conflict of interest in representing the assessor. Notwithstanding this argument, the court issued an order: (1) finding Strong was "acting within the performance of his duties" with regard to the matter for which he sought independent counsel; (2) finding there was a conflict of interest between county counsel and Strong relating to that matter; (3) finding an ethical wall could not be created to enable county counsel to represent Strong in the matter; and (4) ordering the board to select and employ independent legal counsel to represent Strong.

On appeal, the board contends the trial court erred in ordering the board to appoint independent counsel for Strong. On cross-appeal, Strong contends the trial court erred in ordering the board to select the attorney to serve as his independent counsel.

We conclude the trial court erred because under the plain language of section 31000.6, the court has no authority to do anything other than determine whether a conflict of interest exists and determine whether an ethical wall can be created to remedy the conflict. To the extent the court here found Strong was acting within the performance of his duties and ordered the board to select and employ independent counsel for Strong, the court acted

---

[1] All further section references are to the Government Code unless noted otherwise.

beyond its limited authority in the ex parte proceeding then before it. Although Strong might have pursued such a finding and such an order in a mandamus proceeding under Code of Civil Procedure section 1085, by the plain terms of section 31000.6 he was not entitled to either in an ex parte proceeding under that statute. Accordingly, we will reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 2005, Fremont Medical Center merged into Rideout Memorial Hospital, and the real property Fremont owned in Sutter County thereafter belonged to Rideout. For reasons related to the change of ownership, Strong subsequently denied Rideout's claims for the welfare exemption from property taxation for the 2006–2007 and 2007–2008 tax years.[2]

After paying the resulting property taxes, in May 2008, Rideout filed with the board a claim for a refund of more than $850,000 in taxes. The board considered Rideout's refund claim at two closed sessions in February and May 2009. In connection with those sessions, Strong submitted letters to the board explaining the reason he denied the exemption and setting forth his opposition to the board settling the matter with Rideout.

Notwithstanding Strong's opposition, in June 2009 the board entered into a settlement agreement with Rideout, agreeing to pay Rideout just over $588,000 in settlement of its refund claim.

At a public session in August 2009, Strong asked the board to employ independent legal counsel for him, presumably to assist him in challenging the board's settlement of Rideout's refund claim on the ground that the board "wrongfully usurped" his constitutional powers. The board denied his request. Accordingly, on August 27, 2009, Strong—acting through attorney Dennis M. Cota—commenced this proceeding by filing an "EX PARTE APPLICATION TO APPOINT INDEPENDENT COUNSEL" under section 31000.6, with a hearing on the application to be held before Presiding Judge Chris Chandler that day.[3] (Boldface omitted.) In his application, Strong asked that the court appoint Cota as his independent counsel because county counsel had a

---

[2] "Section 214 [of the Revenue and Taxation Code] provides that property used exclusively for religious, hospital, or charitable purposes, which is owned and operated by community chests, funds, foundations, or corporations organized and operated for religious, hospital, scientific or charitable purposes is exempt from property taxation if certain requirements are met. [Citation.] This exemption is known as the 'welfare exemption.' " (*Copren v. State Bd. of Equalization* (1988) 200 Cal.App.3d 828, 832 [246 Cal.Rptr. 361].)

[3] The application named both the board and the office of county counsel as respondents; however, the court ultimately determined that county counsel was improperly joined and ordered that county counsel was not to appear in the caption of any future papers filed in the proceeding.

conflict of interest. In his declaration in support of Strong's application, Cota noted that county counsel (whom he had contacted about the matter on Aug. 25) had "proposed that the matter be addressed on a noticed motion," but Strong had "elected to proceed as noticed"—i.e., with the ex parte proceeding.

Two days before the scheduled hearing, the board filed its opposition. In opposition, the board argued that Strong was not acting in the performance of his duties in seeking to challenge the board's decision to settle Rideout's refund claim. The board also argued that "the entire authority granted the court by section 31000.6 is to make a [conflict of interest] finding, not appoint counsel." The board essentially conceded county counsel had a conflict of interest, and thus the only issue to be decided was "whether the Assessor is entitled to an attorney pursuant to section 31000.6 to assist him *in the performance of his duties*."

Ultimately, Strong's ex parte application was heard by a visiting judge. Thereafter, on September 15, 2009, the court filed its "ORDER AND JUDGMENT," in which it (1) found Strong was "acting within the performance of his duties in seeking to set aside the Compromise and Release Agreement entered into between Sutter County and Rideout Memorial Hospital"; (2) found there was a conflict of interest between county counsel and Strong relating to the matter; (3) found an ethical wall could not be created to enable county counsel to represent Strong in the matter; and (4) ordered the board to "select and employ independent legal counsel at the expense of Sutter County to represent . . . Strong in seeking to overturn the Compromise and Release Agreement entered into between Sutter County and Rideout Memorial Hospital."

The board filed a timely notice of appeal, and Strong filed a timely notice of cross-appeal.

## DISCUSSION

Before we proceed to the arguments on appeal, we begin with the pertinent statute, section 31000.6, which we set out at length.[4] As relevant here, the statute provides as follows:

"(a) Upon request of the assessor . . . of the county, the board of supervisors shall contract with and employ legal counsel to assist the

---

[4] By its terms, section 31000.6 applies to the sheriff as well as the assessor, but we omit references to the sheriff because they are not relevant here. Similarly, while the statute refers to both the county counsel and the district attorney, we omit references to the district attorney as irrelevant here.

assessor . . . in the performance of his or her duties in any case where the county counsel . . . would have a conflict of interest in representing the assessor . . . .

"(b) In the event that the board of supervisors does not concur with the assessor . . . that a conflict of interest exists, the assessor . . . , after giving notice to the county counsel . . . , may initiate an ex parte proceeding before the presiding judge of the superior court. The county counsel . . . may file an affidavit in the proceeding in opposition to, or in support of, the assessor's . . . position.

"(c) The presiding superior court judge that determines in any ex parte proceeding that a conflict actually exists, must, if requested by one of the parties, also rule whether representation by the county counsel . . . through the creation of an 'ethical wall' is appropriate. The factors to be considered in this determination of whether an 'ethical wall' should be created are: (1) equal representation, (2) level of support, (3) access to resources, (4) zealous representation, or (5) any other consideration that relates to proper representation. [¶] . . . [¶]

"(e) If the presiding judge determines that a conflict of interest does exist, and that representation by the county counsel . . . through the creation of an ethical wall is inappropriate, the board of supervisors shall immediately employ legal counsel to assist the assessor . . . .

"(f) As used in this section, 'conflict of interest' means a conflict of interest as defined in Rule 3-310 of the Rules of Professional Conduct of the State Bar of California, as construed for public attorneys."

With the terms of the statute in mind, we turn to the arguments on appeal. For its part, the board contends the trial court "erred by exercising authority not conferred by section 31000.6 by *ordering* the [b]oard to select and employ legal counsel to represent the Assessor. If an action is brought under section 31000.6, the *only* authority afforded the court is to make a finding as to whether a conflict of interest on the part of county counsel exists." The board also contends the trial court "erred in finding that the Assessor would be acting within the performance of his duties in seeking to set aside a compromise and release agreement entered into between the county and a taxpayer."

For his part, on cross-appeal Strong contends "[t]he trial court judge improperly applied Government Code section 31000.6 when he ordered the [b]oard to select [his] attorney."

As we will explain, the board's first claim of error has merit and requires reversal; therefore, we do not reach the board's second claim of error, or Strong's claim of error.

 Because the board's first claim of error requires us to determine the intended meaning of section 31000.6, we begin with a few of the basic principles of statutory construction. "A fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.] In construing a statute, our first task is to look to the language of the statute itself. [Citation.] When the language is clear and there is no uncertainty as to the legislative intent, we look no further and simply enforce the statute according to its terms." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387–388 [20 Cal.Rptr.2d 523, 853 P.2d 978].) "Our role in construing a statute is simply to ascertain and to declare what is in terms or in substance contained in the statute, not to insert what has been omitted." (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 270 [121 Cal.Rptr.2d 203, 47 P.3d 1069], citing Code Civ. Proc., § 1858.)

 By its plain terms, subdivision (a) of section 31000.6 imposes a duty on the board of supervisors to "contract with and employ legal counsel to assist the assessor . . . in the performance of his or her duties" when the assessor requests counsel and "county counsel . . . would have a conflict of interest in representing the assessor . . . ." Subdivision (b) of the statute provides a prompt dispute resolution method when the assessor requests independent counsel but the board of supervisors refuses that request because the board "does not concur . . . that a conflict of interest exists." In other words, the dispute resolution procedure in subdivision (b) becomes operative when the assessor asks the board of supervisors to hire independent counsel to assist him in the performance of his duties but the board refuses to do so based on the belief that independent counsel is unnecessary because there is no conflict of interest and therefore it is ethically permissible for county counsel to represent the assessor. In that circumstance, the statute empowers the presiding judge of the superior court to resolve the dispute over whether a conflict of interest exists in an ex parte proceeding initiated by the assessor. In such a case, county counsel may weigh in on either side—agreeing with the assessor that there is conflict or agreeing with the board of supervisors that there is not—by "fil[ing] an affidavit in the proceeding." (*Ibid.*)

Subdivision (c) of the statute provides that if the presiding judge sides with the assessor in the ex parte proceeding and "determines . . . that a conflict actually exists," the judge must also address "whether representation by the

county counsel . . . through the creation of an 'ethical wall' is appropriate," provided one of the parties asks the court to make that determination. (§ 31000.6, subd. (c).)

Finally, subdivision (e) of the statute provides that if the presiding judge's ruling supports the assessor's position—that is, if the judge decides "a conflict of interest does exist, and . . . representation by the county counsel . . . through the creation of an ethical wall is inappropriate . . ."—the board of supervisors has a duty to "immediately employ legal counsel to assist the assessor." (§ 31000.6, subd. (e).)

 From the plain terms of the statute, we discern that the board is correct here—section 31000.6 provides for an ex parte proceeding to resolve only the very narrow question of whether county counsel has a conflict of interest that prevents county counsel from representing the assessor and, if so, whether an ethical wall can be created to allow the representation of the assessor by county counsel despite the conflict. There is no authority in the statute for the court to resolve in an ex parte proceeding under the statute a dispute over whether the purpose for which the assessor seeks independent counsel is within "the performance of his or her duties." Nor is there any authority for the court to order in the ex parte proceeding that the board of supervisors actually *employ* independent legal counsel for the assessor. By the plain terms of section 31000.6, all the court is empowered to do in an ex parte proceeding brought under the statute is resolve the disagreement between the assessor and the board over whether "a conflict actually exists" and, "if requested by one of the parties, also rule whether representation by the county counsel . . . through the creation of an 'ethical wall' is appropriate." (§ 31000.6, subd. (c).)

Here, after the board settled a property tax refund claim over Strong's objection, Strong requested that the board hire independent counsel to represent him in resolving his disagreement with the board over the settlement. In requesting independent counsel, Strong quite rightly recognized that county counsel would have a conflict of interest in representing him in the matter because county counsel would also have to represent the board. The board denied Strong's request for independent counsel, and there is nothing in the record to indicate the board did so because the board believed there was no conflict of interest and county counsel could ethically represent both the board and the assessor in the matter. Indeed, under the circumstances, it would have been unreasonable for anyone to believe the board thought county counsel could represent both parties. Thus, it is apparent that the dispute here regarding the appointment of independent counsel for Strong was *never* over whether county counsel had a conflict of interest. As the board admitted in its opposition to Strong's ex parte application, "Obviously,

County Counsel could not represent the Assessor in a lawsuit against the Board of Supervisors and no one is suggesting he could. The *only issue* in this proceeding is whether the Assessor is entitled to an attorney pursuant to section 31000.6 to assist him *in the performance of his duties.*" From the outset, the board's position was that Strong was not entitled to county-funded counsel—whether an independent attorney or an attorney in county counsel's office—because the matter for which Strong sought legal assistance—pursuing his dispute with the board over the tax refund settlement—was not within the performance of his duties as assessor.

■ Unfortunately for Strong, section 31000.6 does not provide any means to resolve a dispute between the assessor and the board of supervisors over whether the purpose for which the assessor seeks legal counsel is within the performance of his duties. Instead, the statute provides only for the presiding judge of the superior court to become involved "[i]n the event that the board of supervisors does not concur with the assessor . . . that a conflict of interest exists." (§ 31000.6, subd. (b).) In other words, by its plain terms, section 31000.6 addresses only the situation that arises when the assessor requests the appointment of independent counsel because he believes county counsel cannot ethically represent him due to a conflict of interest, but the board disagrees that any such conflict exists. In such a case, the board's position is necessarily that, because no conflict exists, county counsel *can* ethically represent the assessor and the board in the matter. In such a situation—and *only* in such a situation—section 31000.6 permits the assessor to "initiate an ex parte proceeding before the presiding judge of the superior court" to resolve whether "a conflict actually exists." (§ 31000.6, subds. (b) & (c).)

Here, because there was never a disagreement between Strong and the board about whether county counsel had a conflict of interest, section 31000.6 did not provide Strong with any avenue of relief. To resolve his dispute with the board over whether he was entitled to county-funded legal counsel because the purpose for which he sought legal assistance was within the performance of his duties, Strong needed to pursue a writ of mandate in a regularly noticed proceeding under Code of Civil Procedure section 1085. In mandamus, the court has the power to direct the issuance of a writ to the board of supervisors "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." (*Id.,* subd. (a).) Necessarily, in deciding whether the board of supervisors had a duty to employ independent counsel for the assessor under subdivision (a) of section 31000.6, the court would have to decide whether the purpose for which the assessor seeks independent counsel is within the scope of his duties, because the duty arises only when that condition is satisfied.

■ Properly construed, section 31000.6 does not require two legal proceedings to secure counsel—an ex parte proceeding under section 31000.6 *and* a mandamus proceeding under Code of Civil Procedure section 1085. Only one proceeding is necessary. The question is simply which type of proceeding is appropriate in a given case, and the answer to that question depends on the nature of the dispute that exists between the assessor and the board of supervisors. If the assessor and the board of supervisors disagree over whether county counsel has a conflict of interest—with the assessor insisting a conflict exists and the board of supervisors insisting a conflict does not exist—then an ex parte proceeding under section 31000.6 is the appropriate proceeding to resolve that dispute. If, as here, the assessor and the board of supervisors disagree over whether the purpose for which the assessor seeks legal assistance is within the performance of his duties—with the assessor insisting it is and the board of supervisors insisting it is not—then a regularly noticed mandamus proceeding under the Code of Civil Procedure is the appropriate proceeding. The plain language of section 31000.6 simply does not permit any other result.

It is true that an assessor who seeks to litigate the latter question will have to commence the mandamus proceeding against the board of supervisors either in propria persona or through an attorney not funded by the county, but this unavoidable necessity is not unreasonable, given that the court may ultimately determine the assessor is, in fact, seeking legal assistance for a matter that is *not* within the performance of his duties. There is no reason a county should have to fund its assessor's litigation against its board of supervisors to establish the assessor's right to a county-funded attorney in a matter in which, in the end, it is determined the assessor does not *have* a right to a county-funded attorney. Further, if the Legislature had intended an ex parte proceeding under section 31000.6 to provide a vehicle for resolving a dispute over whether the purpose for which the assessor seeks legal assistance is within the scope of his duties, it could have said so. It did not, and it not for this court to add to the statute under the guise of interpreting it. (See *Esberg v. Union Oil Co., supra*, 28 Cal.4th at p. 270.)

There is nothing in the record here to indicate that when he commenced this ex parte proceeding under section 31000.6, Strong believed—albeit mistakenly—that the board had denied his request for independent counsel because the board believed county counsel did *not* have a conflict of interest. Indeed, any such belief would have been unreasonable because if there is a dispute over a conflict of interest, with the assessor insisting there is one and the board of supervisors insisting there is not, that means the board is taking the position that *county counsel can ethically represent both the board and the assessor in the matter at issue.* It strains credulity to believe the board here ever would have concluded county counsel could ethically represent both the board and Strong in a matter where Strong was questioning

the board's decision to settle a tax refund claim over Strong's objection and where Strong sought "counsel to represent [him] in [the] resolution of [his] disagreement with the [b]oard" on the matter. Obviously county counsel could not represent the board's interest and defend the board's decision to settle the claim and at the same time ethically advise Strong, as the board's potential adversary, on the same matter.

Based on these facts, it does not appear there was ever a reasonable basis for Strong to believe the board was denying him independent legal counsel because the board believed he should use county counsel instead. Thus, Strong knew from the outset that the dispute he was having with the board was not over whether a conflict of interest existed. He also should have known, from reading the statute, that section 31000.6 applies only to such disputes.

Strong contends "there was no misreading of the applicable statute by the trial court" because subdivision (e) of section 31000.6 "gives the court the authority to make its finding [of a conflict of interest], and then make a corresponding order to effectuate action by the board of supervisors." We disagree. There is nothing in the statute that permits the court to "make a corresponding order to effectuate action by the board of supervisors" by ordering the board to employ independent counsel for the assessor, nor can we add such a provision to the statute under the guise of interpreting it. (See *Esberg v. Union Oil Co., supra,* 28 Cal.4th at p. 270.) Furthermore, even if section 31000.6 could be read to implicitly allow the presiding judge to make an "order to effectuate action by the board of supervisors," we remain convinced, for the reasons set forth above, that section 31000.6 did *not* provide a vehicle for the presiding judge to resolve the dispute between Strong and the board over whether the purpose for which he seeks legal assistance is within the scope of his duties. As we have concluded already, the resolution of that dispute has to be undertaken in a regularly noticed mandamus proceeding, not in an ex parte proceeding under section 31000.6. Because Strong needed to have that dispute resolved before he was entitled to *any* order requiring the board to employ legal counsel for him, commencing an ex parte proceeding under section 31000.6 was simply not the proper course for Strong to take to get that order.

Strong contends the issue raised by the board's claim of error "is moot considering County Counsel's statement at the hearing [in the trial court] that '[t]he statute seems to be self-effectuating, [in that] if the Court makes the finding [of conflict] then the statute requires the [b]oard to order the appointment of counsel.' " In Strong's view, "[a]ccording to County Counsel's own logic, there would be no harm to his client with the order continuing as written since he agrees that once a conflict of interest is found,

the [b]oard is to appoint independent counsel." Thus, Strong contends, "[t]he County's appeal of th[is] particular issue is superfluous." In effect, Strong is arguing that any error the trial court made in going beyond the terms of the statute was harmless to the board because the board admits that once the court found a conflict of interest exists, the board had a duty under the statute to employ independent counsel for Strong, and the court's order did nothing more than direct the board to comply with that duty.

We disagree that the trial court's error was harmless. It is true that "[i]f the presiding judge determines that a conflict of interest does exist, and that representation by the county counsel . . . through the creation of an ethical wall is inappropriate," subdivision (e) of the statute imposes a duty on the board of supervisors to "immediately employ legal counsel to assist the assessor." (§ 31000.6, subd. (e).) But this provision—like the entire statute—operates on the assumption that the only dispute between the assessor and the board of supervisors is whether a conflict of interest exists between the assessor and county counsel. In such a case, as we have explained, section 31000.6 provides a prompt dispute resolution procedure to resolve *that issue*. But the statute does not provide any method for resolving any other dispute over an assessor's request for independent legal counsel.

Here, the *only* point in dispute was whether the purpose for which Strong requested independent counsel was within the scope of his duties as assessor. Because the trial court purported to resolve that point in Strong's favor—despite the fact that section 31000.6 did not authorize the court to address that question—letting the current order "continu[e] as written" would indeed "harm" the board because the board would be deprived of a properly noticed proceeding for the determination of that issue.

For the reasons set forth above, we conclude that in this ex parte proceeding under section 31000.6, all the trial court could do was (1) find that a conflict of interest exists; and (2) find that creation of an ethical wall would not be appropriate. To the extent the court did more than that, the court erred, and the court's "ORDER AND JUDGMENT" must be reversed.

By this conclusion, we do not mean to suggest the trial court erred in finding that county counsel was improperly joined in the matter and in ordering that county counsel was not to appear in the caption of any future papers filed in the proceeding. But the court did err in (1) finding Strong was "acting within the performance of his duties in seeking to set aside the Compromise and Release Agreement entered into between Sutter County and Rideout Memorial Hospital" and (2) ordering the board to "select and employ independent legal counsel at the expense of Sutter County to represent . . . Strong in seeking to overturn the Compromise and Release Agreement

entered into between Sutter County and Rideout Memorial Hospital," because the court did not have the authority to do either of those things in this ex parte proceeding under section 31000.6. On remand, the court must enter a new order that omits the finding that Strong was acting within the performance of his duties and the order that the board select and employ counsel for Strong. If Strong wants to pursue those issues, he must do so in another proceeding. Section 31000.6 simply does not provide any avenue for the resolution of those issues.

■ Nothing in our dissenting colleague's opinion persuades us of any error in our analysis of section 31000.6 or of the law, or this case, in general. It is true the "plain meaning" rule is not absolute, and "[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) But the dissent points to nothing that indicates a legislative intent inconsistent with the plain language of the statute. Instead, our dissenting colleague, unfettered by that language, simply applies the statute he thinks the Legislature *should* have enacted.

The dissent begins by taking on our conclusion that section 31000.6 does not authorize a trial court to issue an order directing the appointment of independent counsel. The dissent suggests such authority must be implicit in the statute,[5] because otherwise the statute is "unfit to completely resolve any dispute between an assessor and a [county] board of supervisors." (Dis. opn., *post*, at p. 504.) Not so. The statute provides for the complete resolution of a dispute over whether a conflict of interest precludes county counsel from representing both the assessor and the board of supervisors in relation to a particular matter. As we have noted, under subdivision (e) of the statute, "[i]f the presiding judge determines that a conflict of interest does exist, and that representation by the county counsel . . . through the creation of an ethical wall is inappropriate," the statute imposes a duty on the board of supervisors to "immediately employ legal counsel to assist the assessor."

The dissent's complaint that "a trial court's declaration of a right to independent counsel without an order for the appointment of counsel will not satisfy the assessor who wants to file an actual challenge to an improper tax refund" (dis. opn., *post*, at p. 504) rests on the belief that a board of supervisors that loses a *proper* ex parte proceeding under section 31000.6 will ignore the duty imposed by subdivision (e) (not to mention subd. (a)) and will instead require the assessor to bring a second legal action to obtain the

---

[5] Although the dissent says our conclusion on this point "conflicts with the language and intent of section 31000.6" (dis. opn., *post*, at p. 504), nowhere does the dissent actually identify a conflict between our conclusion and the statutory language. Thus, the purported conflict rests only on the dissent's interpretation of the "intent" of the statute.

appointment of counsel. We do not share the dissent's cynicism. Given the presumption that "official duty has been regularly performed" (Evid. Code, § 664), we reasonably presume, for purposes of construing section 31000.6, that when it loses a *proper* proceeding under section 31000.6, an official body like a board of supervisors will regularly and promptly perform the duties imposed on it by the statute, assuming the board does not seek appellate review of the presiding judge's decision. Thus, there is no reason to judicially insert the power to order the appointment of counsel into the statute, as the dissent would do.

In any event, we are not faced here with a *proper* ex parte proceeding under section 31000.6, in which, consistent with the statutory language, the issue tendered to the presiding judge was whether a conflict of interest precluded county counsel from representing both the board of supervisors and the assessor with respect to a particular matter. Rather, we are faced with a proceeding in which the only real issue tendered for decision was an issue that *section 31000.6 simply does not provide a method of resolving*—a dispute over whether the purpose for which the assessor seeks legal assistance is within the performance of his duties. In the dissent's view, the authority to resolve this question, too, must be read into the statute, but the dissent never really explains why this is so.

To the extent the dissent suggests Strong should be forgiven for seeking relief not provided in the statute because he is not a lawyer, that is simply not a basis for adding statutory language that is not there. As our Supreme Court has observed, "[a] doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985 [35 Cal.Rptr.2d 669, 884 P.2d 126].)

Furthermore, and in any event, we cannot agree with the dissent's assessment that Strong pursued an ex parte proceeding under section 31000.6 because he understandably "fail[ed] to discern . . . the board's true reason for denying counsel." (Dis. opn., *post*, at p. 506.) When Strong asked the board to employ independent legal counsel for him, it had to be clear to everyone that he wanted counsel to pursue his opposition to the board's settlement with Rideout. Indeed, in seeking relief in this proceeding, Strong specifically asserted that he "gave notice to [county counsel] and [the board] to employ independent counsel to represent [him] in resolution of a disagreement with the *[b]oard*." (Italics added.) Under this circumstance, even Strong could not reasonably have believed the board's refusal to employ an independent attorney for him was because the board thought county counsel would "do just fine."

Moreover, contrary to the dissent's conclusion, Strong was not "without any legal advice" (dis. opn., *post*, at p. 506) when he decided to pursue an ex parte proceeding under section 31000.6 rather than a mandamus proceeding under Code of Civil Procedure section 1085 to challenge the board's decision. Strong's ex parte application, along with a memorandum of points and authorities and two declarations, were prepared and filed on his behalf *by an attorney* Strong hired to represent him in his capacity as assessor. Generally, "an attorney's knowledge is imputed to his client . . ." (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 219 [100 Cal.Rptr.2d 718]), and an attorney is " 'presumed to know the laws and rules of procedure which govern the forms of litigation, the legal remedies, which he selects and pursues' " (*American Home Assurance Co. v. Benowitz* (1991) 234 Cal.App.3d 192, 203 [285 Cal.Rptr. 626]). The dissent does not explain why Strong and his attorney should be exempt from these rules.

While we fault our dissenting colleague for advancing an interpretation of section 31000.6 that is not supported by the statutory language or by any extrinsic consideration that would justify departing from that language, he faults us for "accept[ing] . . . county counsel's argument that . . . Strong's duties did not include the filing of a legal action to challenge improper tax refunds." (Dis. opn., *post*, at p. 506, fn. omitted.) But we have done no such thing. The question of whether Strong's intended challenge to the board's settlement with Rideout is within the scope of his duties as assessor is the question we have concluded *the trial court never should have reached in this ex parte proceeding under section 31000.6.* We have expressed *no* opinion on that issue, and we do not intend to.

For his part, however, our dissenting colleague not only expresses an opinion on the subject, his opinion is so strong that he concludes the board's contrary position—that Strong is not acting within the scope of his duties as assessor in seeking to challenge the settlement with Rideout—amounts to nothing more than a "bogus excuse" for denying Strong independent counsel. (Dis. opn., *post*, at p. 508.) Our colleague then goes on to draw his own conclusion about "the board's true reason for denying independent counsel"—which, in his assessment, has something to do with the board seeking to "preserve [a] special rate for inpatient hospital services provided by Rideout"—(dis. opn., *post*, at p. 508) and from that conclusion he determines that, "[o]n the record presented, the bad guys win this lawsuit" (dis. opn., *post*, at p. 511). In reaching this remarkable end, he faults us for "accepting the bogus excuse tendered by the board" and for "allow[ing] bogus arguments

and smokescreen rationales by a board of supervisors to insulate [its] decisions from the purview of section 31000.6."[6] (Dis. opn., *post*, at pp. 508, 509.)

For what it is worth, the position our colleague so vehemently advances in his dissent—that "the legal action apparently planned by Strong *is* within the duties of a county tax assessor" (dis. opn., *post*, at p. 507)—resolves a question that, in the trial court at least, Strong himself contended should *not* be decided. It was the board that first argued, in opposition to Strong's ex parte application, that Strong was not entitled to relief because he was not seeking legal counsel to assist him in the performance of his duties. Strong filed no reply to the board's opposition and therefore took no position on that issue in writing, but at the hearing on his application his attorney argued that the board was "prematurely attempting to address who would ultimately prevail in a contest over the respective authorities of the office of the assessor." When the trial court asked counsel if the assessor has "any enforcement responsibilities," counsel responded, "those issues . . . would go to the larger substantive question. What we are here today to address is merely the ex-parte application authorized by this statute." It was only in *this* court, after the trial court ruled in his favor on an issue he thought the trial court should not reach, that Strong first took up the banner and argued that "[t]he trial court's discretionary determination that [he] was acting in the performance of his duties with regard to the Rideout tax refund is squarely supported by the facts."

Be that as it may, contrary to what our colleague may believe, our decision in this case—about what section 31000.6 means and how it applies to the facts presented here—is not based on "bogus arguments and smokescreen rationales" offered by the board. It is based on the *law*, and the legal principles of statutory interpretation by which we are all bound. As we have explained, by its plain terms, section 31000.6 provides a prompt method for resolving a dispute between a board of supervisors and an assessor over the narrow issue of whether a conflict of interest precludes county counsel from representing both parties in connection with a particular matter. While other

---

[6] All of this is based on a statement by Strong in his declaration that at some unidentified point in time he "bec[a]me aware" of "a medical service contract dated February 26, 1994 . . . between the County of Sutter and [Rideout]," which, *according to him* (since he did not offer the contract in evidence), "allows Sutter County to provide reimbursement at lower than market rate for inpatient hospital services," but which "calls for the subsidized rate to be raised to 100% of the service price if any property tax is assessed on Rideout's property."

Contrary to the dissent's claim, there is no evidence that "the subsidized rate would *double* if any property tax were assessed on Rideout's real property." (Dis. opn., *post*, at p. 502.) The only evidence is Strong's statement that the subsidized rate would increase to the market rate, i.e., "to 100%."

disputes may arise when an assessor seeks independent counsel, the Legislature chose not to subject those disputes to resolution under section 31000.6, and it is not for us to second-guess that decision, no matter what. The Legislature specifically created what the dissent calls "the assessor's statutory right to expedient relief" (dis. opn., *post*, at p. 509) to expeditiously resolve a dispute between the assessor and the board of supervisors when the assessor requests independent counsel instead of county counsel and "the board of supervisors does not concur with the assessor . . . that a conflict of interest exists" to prevent county counsel from serving as the assessor's attorney. (§ 31000.6, subd. (b).) Here, as we have explained, there never was any such disagreement, nor could Strong or his attorney have reasonably believed there was. Thus, Strong had no business trying to resolve his greater disagreement with the board—over whether he was acting in the performance of his duties—in an ex parte proceeding that was never designed for that purpose.[7]

In the end, then, it does not matter exactly what the board's "excuse" was for refusing to employ independent counsel for Strong, as long as it was *not* that the board believed county counsel could serve as his counsel. Only if *that* is the subject of the disagreement between the parties is section 31000.6 operative; otherwise, relief lies in mandamus. The dissent's arguments to the contrary, detached from the statutory language and long-accepted principles of statutory construction and buoyed with vituperative condemnation of our acceptance of arguments we have *not* accepted and, in fact, do not reach, are not persuasive.

## DISPOSITION

The "ORDER AND JUDGMENT" filed September 15, 2009, is reversed, and the case is remanded to the trial court with directions to enter a new and different order consistent with this opinion. The board shall recover its costs on appeal. (Cal. Rules of Court, rule 8.276(a)(1).)

Scotland, P. J., concurred.

---

[7] At the hearing on Strong's ex parte application, Strong's attorney actually complained that "with regard to the supplemental points and authorities or even the preliminary points and authorities [filed by county counsel on behalf of the board,] we would hearken back to the provisions of [section] 31000.6 that authorize an affidavit in opposition to the petition but make no provision for the extended briefing that [c]ounty [c]ounsel has taken the liberty to provide." Thus, essentially, Strong took the position in the trial court that the trial court had no business considering "extended briefing" on whether he was acting within the scope of his duties, but should simply consider whether county counsel had a conflict of interest—a point on which there was no disagreement. In this way, Strong sought to obtain the appointment of counsel while avoiding the greater question of whether he had the right to county-funded counsel in the first place.

**SIMS, J.,** Dissenting.—I respectfully dissent.

In Government Code section 31000.6[1] (section 31000.6), the Legislature has provided an efficient and economical procedure for having counsel appointed for an assessor who has a conflict of interest with a board of supervisors. Unfortunately, the majority adopts an unnecessarily cramped, literal reading of the statute. Thus, the majority requires the assessor, who does not have counsel, to pursue a full-blown traditional mandamus action simply to get counsel appointed. There is no need to create this additional time-consuming and expensive litigation.

Where, as here, the majority's literal, "plain meaning" reading of the statute produces a result that cannot be what the Legislature intended, the "plain meaning" rule must give way. "[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], followed in *People v. King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27].)

---

[1] In pertinent part, Government Code section 31000.6 provides:

"(a) Upon request of the assessor or the sheriff of the county, the board of supervisors *shall* contract with and employ legal counsel to assist the assessor or the sheriff in the performance of his or her duties *in any case where the county counsel or the district attorney would have a conflict of interest in representing the assessor or the sheriff.*

"(b) In the event that the board of supervisors does not concur with the assessor or the sheriff that a conflict of interest exists, the assessor or the sheriff, after giving notice to the county counsel or the district attorney, may initiate an ex parte proceeding before the presiding judge of the superior court. The county counsel or district attorney may file an affidavit in the proceeding in opposition to, or in support of, the assessor's or the sheriff's position.

"(c) The presiding superior court judge that determines in any ex parte proceeding that a conflict actually exists, must, if requested by one of the parties, also rule whether representation by the county counsel or district attorney through the creation of an 'ethical wall' is appropriate. The factors to be considered in this determination of whether an 'ethical wall' should be created are: (1) equal representation, (2) level of support, (3) access to resources, (4) zealous representation, or (5) any other consideration that relates to proper representation. [¶] . . . [¶]

"(e) If the presiding judge determines that a conflict of interest does exist, and that representation by the county counsel or district attorney through the creation of an ethical wall is inappropriate, *the board of supervisors shall immediately employ legal counsel to assist the assessor or the sheriff.*" (Italics added.)

A reasonable interpretation of section 31000.6 allows a trial court to do precisely what the trial court did here. I would affirm the trial court, except that I would allow the assessor to choose his own counsel.

## Background

In April 2005, Fremont Medical Center (Fremont) merged into Rideout Memorial Hospital (Rideout). After the merger, Rideout claimed a welfare exemption from real property taxes on the parcel previously owned by Fremont. Sutter County Assessor Michael V. Strong denied the exemption for the 2006–2007 tax year because Rideout failed to timely record its interest in the property. Even after Rideout recorded its interest in the property, problems relating to the vesting of title caused Strong to deny the welfare exemption for the 2007–2008 tax year.

In May 2008, Rideout filed for a tax refund with the Sutter County Board of Supervisors (the board). Assessor Strong submitted letters to the board, explaining the reasons for the denial of the exemptions and his opposition to the issuance of any refund. The board held two closed sessions before authorizing full refund of the 2007–2008 taxes and refund of half the 2006–2007 taxes on the real property formerly owned by Fremont.

Strong subsequently learned that Sutter County and the Fremont-Rideout Health Group had previously entered into a medical service contract allowing the county to make reimbursements at less than market rates for inpatient services. However, the contract specified that the subsidized rate would *double* if any property tax were assessed on Rideout's real property.

During an open meeting by the board in August 2009, Strong requested that independent legal counsel be retained for him in the matter of Rideout's property tax refund. At the meeting, the board denied the request for reasons not revealed in the record. A week later, Strong gave notice to county counsel that he would apply for appointment of independent counsel to the presiding judge of the Sutter County Superior Court, in accordance with section 31000.6.

Strong's ex parte application to appoint independent counsel was heard in September 2009. County counsel was present and urged the court to deny the request for counsel, stating: "I'm simply asking you to make the finding that this request for [an] attorney is not in the performance of the assessor's duties that's to set aside an action of the Board of Supervisors. A taxpayer suit can

be brought but not by the assessor in the performance of his duties but by the assessor as a taxpayer." County counsel further stated, "I can see no other purpose for appointing counsel other than for a lawsuit."

County counsel acknowledged his inability to provide conflict-free representation to Strong on the matter of the Rideout refund request. Counsel stated, "I would agree that I cannot represent the assessor in a lawsuit against the Board of Supervisors." To this, counsel added, "No ethical wall is possible in a five-attorney office."

After the hearing, the trial court issued an order and judgment that states, in pertinent part:

"1. The court finds that Assessor Michael V. Strong is acting within the performance of his duties in seeking to set aside the Compromise and Release Agreement entered into between Sutter County and Rideout Memorial Hospital;

"2. The court finds that a conflict of interest exists between County Counsel and Assessor Michael V. Strong in seeking to set aside the above-referenced agreement between the County and Rideout Memorial Hospital; and

"3. The court finds that an ethical wall cannot be created pursuant to Government Code section 31000.6(c) such that would enable another member of the County Counsel's office to represent Assessor Michael V. Strong in this matter;

"4. The court finds that the 'Office of the County Counsel, Sutter County' was improperly joined as a party respondent in this matter;

"5. It is ordered that 'Office of the County Counsel, Sutter County' shall be stricken as a respondent in this proceeding and shall not appear in the caption of any future papers filed in this proceeding;

"6. It is ordered that the Sutter County Board of Supervisors shall select and employ independent legal counsel at the expense of Sutter County to represent Assessor Michael V. Strong in seeking to overturn the Compromise and Release Agreement entered into between Sutter County and Rideout Memorial Hospital."

### The Board's Appeal

### A

Although the majority characterizes section 31000.6 as "a prompt method for resolving a dispute between a board of supervisors and an assessor over

the narrow issue of whether a conflict of interest precludes county counsel from representing both parties in connection with a particular matter," the majority opinion renders the section unfit to completely resolve any dispute between an assessor and a board of supervisors.[2] (Maj. opn., *ante*, at p. 499.) According to the majority, section 31000.6 empowers the trial court "to resolve only the very narrow question of whether county counsel has a conflict of interest that prevents county counsel from representing the assessor and, if so, whether an ethical wall can be created . . . ." (Maj. opn., *ante*, at p. 491.) When a board of supervisors believes county counsel can provide conflict-free counsel to an assessor, the majority leaves section 31000.6 unable to support the granting of *any* relief by a trial court that finds independent legal counsel to be necessary. (Maj. opn., *ante*, at pp. 489–490, 494.) To obtain an order directing the appointment of independent counsel, an assessor must then file, *in propria persona*, a petition for writ of mandate. The majority may believe that "[o]nly one proceeding is necessary." (*Id.* at p. 493.) However, a trial court's declaration of a right to independent counsel without an order for the appointment of counsel will not satisfy the assessor who wants to file an actual challenge to an improper tax refund. The majority's cumbersome two-case requirement conflicts with the language and intent of section 31000.6.

The real mischief results when a board of supervisors opposes appointment of independent counsel for an assessor on any ground other than lack of conflict by the office of county counsel. Here, the majority faults Assessor Strong for failing to engage in statutory interpretation of section 31000.6 to determine that the section is inapplicable before preparing and litigating a mandamus action—all without the benefit of legal counsel. (Maj. opn., *ante*, at p. 492.) The majority announces that "because there was never a disagreement between Strong and the board about whether county counsel had a conflict of interest, *section 31000.6 did not provide Strong with any avenue of relief.*" (*Ibid.*, italics added.) In effect, the majority requires assessors to seek the type of judicial relief that comports with the particular rationale advanced by the board for denying independent counsel. I see no reason to allow a board's rationale for denying counsel to determine whether the assessor may seek an efficient remedy or must navigate the complexities of writ proceedings.

In short, the majority opinion leaves section 31000.6 unhelpful when a board disagrees that county counsel has a conflict in representing the assessor

---

[2] As the majority notes, this statute also applies to requests for independent counsel by county sheriffs and to instances in which the district attorney cannot provide conflict-free representation. (Maj. opn., *ante*, at p. 488, fn. 4.)

and irrelevant when the board advances *any* other rationale for the denial of independent counsel.

It does not have to be this way.

## B

Subdivision (a) of section 31000.6 instructs a board of supervisors to retain independent legal counsel when requested by an assessor on account of county counsel's conflict of interest. Subdivision (b) provides the assessor with a simple and expeditious manner of resolving a situation in which the board of supervisors believes that independent counsel is unnecessary. After giving notice, the assessor may initiate an ex parte proceeding before the presiding judge of the superior court.

Allowing the assessor to proceed in an ex parte manner indicates that the matter should be resolved expeditiously. Ex parte proceedings allow for quick resolution of issues. (Cf., e.g., *People v. Ayala* (2000) 24 Cal.4th 243, 263 [99 Cal.Rptr.2d 532, 6 P.3d 193]; *Landmark Holding Group, Inc. v. Superior Court* (1987) 193 Cal.App.3d 525, 528 [238 Cal.Rptr. 475].) The assessor's entitlement to the preferential route of submitting the request directly to the presiding judge further indicates the efficient and prompt nature of the proceeding contemplated by section 31000.6. The majority does not argue to the contrary.

## C

The majority effectively requires an assessor to file a new and separate action to secure counsel after successfully showing that county counsel has a conflict of interest that cannot be remedied by implementation of an "ethical wall" in county counsel's office. (See maj. opn., *ante*, at p. 495.) Under this approach, a separate petition for writ of mandate is necessary because the trial court lacks power to do *anything* under section 31000.6 other than to find that county counsel actually has the irremediable conflict alleged by the assessor. (Maj. opn., *ante*, at pp. 495–496.) The majority expects tremendous legal acumen from a tax assessor who has not yet acquired the right to legal counsel. The majority chides Assessor Strong, charging that he "should have known, from reading the statute, that section 31000.6 applies only to such disputes" that involve the limited question of "whether a conflict of interest existed." (Maj. opn., *ante*, at p. 494.) Thus, the majority holds that "Strong needed to pursue a writ of mandate in a regularly noticed proceeding under Code of Civil Procedure section 1085." (Maj. opn., *ante*, at p. 492.)

I do not think expertise in statutory interpretation should be expected of an assessor who may be working without any legal advice. Moreover, petitions seeking mandate relief are not easy to prepare—even for members of the bar. Justice Gilbert has aptly observed, "Those who have tried to extract a coherent set of rules from cases and treatises on writs have found it easier to comprehend a 'washing bill in Babylonic cuneiform.' (Gilbert & Sullivan, Pirates of Penzance (1879).)" (*Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1272 [258 Cal.Rptr. 66].) Yet, the majority imposes the task on assessors in order to secure legal counsel. In this case, it is a mere fortuity that Strong happened upon legal counsel willing to prepare an ex parte application, appear in superior court, and pursue both an appeal and cross-appeal—all without guarantee of payment.

Construing section 31000.6 as requiring two legal proceedings to secure counsel for legal proceedings effectively renders section 31000.6 useless because the assessor would be wiser to ignore section 31000.6 by seeking mandate relief in the first instance in every case. (But see *Ruiz v. Sylva* (2002) 102 Cal.App.4th 199, 209 [125 Cal.Rptr.2d 351] ["A statute should not be construed in a manner that renders it superfluous."].)

I would not blame the assessor for attempting to avail himself of the expediency promised by section 31000.6. At the time Strong gave notice of his intent to file an application under section 31000.6, he knew that the board had denied his request for independent counsel. But Strong did not know county counsel would admit an irremediable conflict but nonetheless continue to oppose the application.

Nonetheless, the majority assigns error to Strong for failing to discern that the board's true reason for denying counsel was a belief that Strong was not acting within the scope of his duties in seeking to overturn the tax refund to Rideout. Section 31000.6 did not require Assessor Strong to guess at the board's reason for denying his request for independent legal counsel. The proper focus under the statute is on whether the assessor is acting in the scope of his or her duties in pursuing legal action for which county counsel cannot provide representation rather than on what rationale the board might tender for denying counsel. The problematic nature of the majority's approach is illustrated by its acceptance of county counsel's[3] argument that Assessor Strong's duties did not include the filing of a legal action to challenge improper tax refunds. (Maj. opn., *ante*, at pp. 493–494.)

---

[3] The record does not indicate that the board itself ever adopted the reasoning advanced by county counsel in opposing the application for appointment of independent counsel.

Case law establishes that the legal action apparently planned by Strong *is* within the duties of a county tax assessor. An assessor has the duty to ensure that all property is correctly taxed. (Rev. & Tax. Code, §§ 51.5 [correction of base year values and clerical errors], 616 [requiring assessor to annually attest he or she has made " 'diligent inquiry and examination to ascertain all the property within the county subject to assessment by me, and that it has been assessed on the roll, according to the best of my judgment, information, and belief, at its value as required by law' "], 5097.2 [specifying grounds on which the assessor may grant tax refunds].) If the assessor believes that a tax refund has been wrongly granted, the assessor has the duty to seek correction of the error—even if the refund was granted by the county's board of supervisors. (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 8, 17–18 [84 Cal.Rptr.2d 715] (*Plaza Hollister*).)

*Plaza Hollister, supra*, 72 Cal.App.4th 1, involved an action for tax refund that was filed in superior court by a corporate taxpayer against the county. (*Id.* at p. 7.) A stipulated judgment was entered, representing a compromise between the taxpayer and the board of supervisors. (*Id.* at pp. 7–8, 11–12.) The assessor intervened and attacked the stipulated judgment on procedural and substantive grounds. (*Ibid.*) The trial court denied the assessor's motion to vacate the judgment, concluding that the board had an absolute right to settle actions for refund of taxes. (*Id.* at p. 12.) The assessor appealed, and the Court of Appeal reversed. (*Id.* at p. 8.)

The *Plaza Hollister* court (*Plaza Hollister, supra*, 72 Cal.App.4th 1), acknowledged that a board of supervisors has authority to decide "valuation questions concerning individual assessments on the local roll." (*Id.* at p. 23.) Even so, a board's authority to grant refunds is not unfettered, but must be exercised in a manner consistent with statute. (*Ibid.*) Accordingly, judicial review of the board's settlement for statutory compliance was appropriate. (*Id.* at p. 23 & fn. 15.)

The *Plaza Hollister* court (*Plaza Hollister, supra*, 72 Cal.App.4th 1), also held that the assessor had the prerogative to challenge a compromise of an action for tax refund that he believed to be unauthorized by law. (*Id.* at pp. 17–18.) *Plaza Hollister* explains that "the Assessor, in his official capacity, has a sufficient interest under our tax system to have standing to bring a motion to vacate a judgment on the ground it is void where the judgment revises the base-year value reached by the Assessor and reduces assessments on the local roll prepared by the Assessor." (*Id.* at p. 18.)

In *Plaza Hollister, supra,* 72 Cal.App.4th 1, the Court of Appeal ultimately concluded that the stipulated judgment erroneously relied upon an unsubstantiated method of cash equivalent analysis for the property valuation at issue. (*Id.* at p. 25.) Moreover, the tax refund had not been timely and properly claimed. (*Id.* at p. 36.) Consequently, the *Plaza Hollister* court reversed the stipulated judgment. (*Ibid.*)

*Plaza Hollister* teaches that an assessor has the right to challenge a compromise for tax refund entered into between a board of directors and a taxpayer. Moreover, the assessor may resort to legal action to seek correction of substantive and procedural errors in the granting of a tax refund. (*Plaza Hollister, supra,* 72 Cal.App.4th at pp. 25, 36; see also *Shubat v. Sutter County Assessment Appeals Bd.* (1993) 13 Cal.App.4th 794, 797 [17 Cal.Rptr.2d 1] (*Shubat*) [considering an assessor's challenge to determination of taxable property value on procedural and substantive grounds].) Accordingly, the rationale that Strong has no right to challenge the board's compromise with Rideout for a tax refund has no merit.

In accepting the bogus excuse tendered by the board, the majority overlooks the portion of the record that suggests the board's true reason for denying independent counsel. The majority's recitation of the facts ignores Strong's declaration that Sutter County had a contract with Rideout that would automatically double the special rate for inpatient hospital services paid by the county if Rideout were taxed on its real property. Strong further declared, "I am informed and believe that the County supports this contract." Strong's declaration suggests that the board unlawfully compromised on the tax refund to preserve its special rate for inpatient hospital services provided by Rideout.

Indeed, county counsel's opposition in the trial court labored to recharacterize the tax refund granted by the board to Rideout as a litigation compromise unrelated to tax considerations. After receiving Strong's notice of intent to apply for independent counsel under section 31000.6, county counsel filed written opposition on behalf of the board that argued: "It is indisputable that the Board and only the Board or its delegee, may allow, settle, or compromise claims against the county. The Assessor asserts that the Board *usurped* his authority to grant or deny welfare exemptions. This is not the case. The Board did *not purport to grant or deny the welfare exemption* to Rideout. Rather the Board resolved a vigorously disputed claim after consideration of factors such as probability, or lack thereof, of success in litigation, the legal validity of the claim, and economic factors, such as the potential cost to the county in terms of damages, attorneys' fees, and costs."

If we are going to impute to Strong the knowledge of the reason for the board's rejection of his request for counsel, we should do so acknowledging the evidence in the record. Here, it indicates that the board granted the refund for considerations unrelated to tax rules.

More importantly, the majority's focus on the rationale given by the board deflects attention from the key considerations imposed by section 31000.6. I see nothing in section 31000.6 that allows the *type of argument* presented by a board to eviscerate the assessor's statutory right to expedient relief. Nonetheless, the majority holds that "[i]f, as here, the assessor and the board of supervisors disagree over whether the purpose for which the assessor seeks legal assistance is within the performance of his duties—with the assessor insisting it is and the board of supervisors insisting it is not—then a regularly noticed mandamus proceeding under Code of Civil Procedure is the appropriate proceeding." (Maj. opn., *ante*, at p. 493.) I cannot believe that the Legislature intended to allow bogus arguments and smokescreen rationales by a board of supervisors to insulate their decisions from the purview of section 31000.6.

## D

I wholeheartedly agree with the majority that "[t]here is no reason a county should have to fund its assessor's litigation against its board of supervisors to establish the assessor's right to a county-funded attorney in a matter in which, in the end, it is determined the assessor does not have a right to a county-funded attorney." (Maj. opn., *ante*, at p. 493, italics omitted.) That is why the question of whether an assessor has requested legal representation on a matter concerning the performance and duties of the assessor's office directly relates to the question of whether the assessor requires the services of independent counsel. Because section 31000.6 allows the trial court to consider whether a matter is within the scope of the assessor's duties, a court is able to reject a request for counsel when the assessor is faced with adverse action by the county or district attorney that affects the assessor only in his or her personal capacity.[4]

On this point, it is worthwhile to note that section 31000.6 contemplates consideration of whether the assessor is acting within the scope of his or her duties when it provides, in subdivision (a), that "the board of supervisors shall contract with and employ legal counsel to assist the assessor or the sheriff *in the performance of his or her duties* in any case where the county

---

[4] As noted in footnote 2, *ante*, section 31000.6 also applies to instances in which the district attorney has a conflict of interest vis-à-vis the assessor.

counsel or the district attorney would have a conflict of interest in representing the assessor or the sheriff." (Italics added.) In harmony with subdivision (a) of section 31000.6, the trial court must be able to deny the application by finding no need for independent counsel when the need for legal representation does not pertain to the assessor's official duties. Thus, the better statutory construction for section 31000.6 is that the section allows a trial court to order conflict-free counsel to be retained for an assessor whenever the assessor properly demonstrates the need for independent counsel.

The majority rejects this construction by denying that there is "any authority for the court to order in the ex parte proceeding that the board of supervisors actually *employ* independent legal counsel for the assessor." (Maj. opn., *ante*, at p. 491.) This holding eviscerates the utility of subdivisions (b) through (e) by allowing the trial court to recognize a right without being able to provide for a remedy. Moreover, it ignores the import of subdivision (a) of section 31000.6.

Here, Strong was acting within the duties of his office to ensure that all due taxes were properly collected. As in *Plaza Hollister* and *Shubat*, the assessor had the right to bring a legal action to cancel a refund or improper valuation he believed to have been improperly granted. (*Plaza Hollister, supra*, 72 Cal.App.4th at pp. 25, 36; *Shubat, supra*, 13 Cal.App.4th at p. 797.)

To bring a legal action challenging the board's compromise with Rideout, Assessor Strong requires legal advice and representation. To this end, subdivision (a) of section 31000.6 instructs the board of supervisors to appoint independent counsel whenever an assessor requests such representation due to county counsel's conflict. It therefore follows that, when the trial court concludes that county counsel has a conflict not remediable by an ethical wall, the board of supervisors *must* retain independent counsel. A board of supervisors should not be allowed to thwart both sections 31000.6 and the trial court's finding of a need for independent counsel until a petition for writ of mandate is filed by a county assessor in propria persona.

### The Assessor's Cross-appeal

In his cross-appeal, Strong argues the trial court erred when it ordered "[t]he Sutter County Board of Supervisors shall *select* and employ independent legal counsel . . . to represent Assessor Michael V. Strong . . . ." At oral argument, county counsel conceded the issue. I would accept the concession.

## Conclusion

On the record presented, the bad guys win this lawsuit. The majority makes bad law and reaches a bad result. I would affirm the judgment (order) of the trial court, except that I would allow the assessor to choose his own counsel.